## Althouse, Guardian, v. Mont Alto Lodge No. 246, Knights of Pythias

*Thomas Ross,* for plaintiff; *Harry E. Grim,* of *Grim & Grim,* for defendants.

BOYER, J.—This is a suit in equity brought by Emerson R. Althouse, a lunatic, through his guardian, Michael Althouse, against three individuals on behalf of

themselves and others, members of Mont Alto Lodge No. 246, Knights of Pythias, and against the said lodge, an unincorporated association, for a mandatory decree against the defendants directing them to pay to the plaintiff accrued and accruing sick benefits alleged to be due to the plaintiff as a member of the lodge. The bill alleges that there are sick benefits due the plaintiff from February 6, 1919, at the rate of $5 per week for the first year, at the rate of $4 per week for the second year and $3 per week for the balance of the period of disability subsequent to the second year. The plaintiff became a member of the lodge in 1911; was committed to an insane asylum in 1919, where he has since remained; had a guardian appointed in 1927; and started this suit for the recovery of sick benefits in 1928.

The defendants contend that they are not liable for the payment of sick benefits on the grounds, first, that the plaintiff was guilty of laches, the statute of limitation having intervened before the bringing of the suit; second, that notice of plaintiff's illness or disability was not given to defendants as required by the bylaws of the lodge; third, that under the bylaws of the lodge as they existed prior to 1926 there was no liability to a member for sick benefits where such member was confined in a State institution for the insane, unless such member had dependents, which this plaintiff did not have; fourth, that since the change in the bylaws in 1926 there is no liability where the member is maintained in an insane asylum at public expense, as they aver this plaintiff was; and fifth, that under the bylaws of the lodge the plaintiff could not institute this suit until he had exhausted all the remedies provided by the bylaws of the local lodge and Grand Lodge of the State. . . .

The questions involved in this suit are stated in the introductory paragraph of this opinion and will be considered in that order. The first objection to the claim is that the plaintiff was guilty of laches by delaying suit for more than 6 years from the beginning of the alleged liability. There might be merit in this contention if the plaintiff, Emerson R. Althouse, were sui juris, but the statute of limitation will not run against an insane person nor will such a person be held guilty of laches in equity. The guardian acted promptly after his appointment. There is no merit in this contention. Furthermore, by reason of the view we take as to the effect of the bylaws relating to insane members, this contention is of no consequence.

The second objection that the plaintiff failed to give notice of his illness as required by the bylaws of the lodge is met by the same answer, namely the mental incapacity of the plaintiff to give such notice. The requirement of the bylaw to give such notice implies, and is conditioned upon, ability to give such notice which the plaintiff did not have.

The third objection has, in our opinion, real merit and must be sustained. The bylaws of the lodge up to January 11, 1926, provided that no sick benefits would be paid to an insane member who had no wife, children, or other relative dependent upon him. It is admitted that this member has no dependents and, therefore, is clearly not within the class entitled to sick benefits. The plaintiff contends that the amending bylaw approved January 11, 1926, was merely declaratory of the meaning of the original bylaw in force prior to that date. However, we cannot agree with this contention as there is nothing in the amending bylaw to indicate such an intention nor is there any ambiguity in the original bylaw requiring it to be interpreted by an amendment. The original bylaw is as clear as it could well be made on this subject, and although we have examined it carefully, we can find no provisions in it which would entitle the plaintiff to sick benefits. It is very sweeping in its exclusion of insane members from sick benefits unless they have dependents. The plaintiff further contends that the

secretary of the lodge had stated in a letter that the amended bylaw was in force at the time the plaintiff became a member and contends that the lodge is now bound by that statement. It is apparent that that statement was made through an error, and the lodge could not be bound by the statement. Neither is the lodge estopped from denying the statement inasmuch as the plaintiff was not injured and lost no rights through the misstatement.

The fourth objection refers to the amended bylaw which clearly provides for the payment of sick benefits to an insane member unless he is maintained in a State institution for the insane at public expense. The evidence in this case is clear that the plaintiff is not, and certainly up to the time of the hearing was not, maintained at public expense. He was maintained at the expense of his own estate and his guardian has been given notice that the balance of his estate, consisting of real estate in Florida, will be held liable for his support, and if that is not sufficient then his father will be held liable. He therefore clearly comes within the class entitled to benefits under that bylaw of the lodge approved January 11, 1926. There is nothing in this bylaw making it retroactive: Roblin v. Supreme Tent, K. of M., 269 Pa. 139; and the liability of the lodge under this bylaw would begin with the date when it went into effect which, in the absence of anything to show the contrary, must be held to be the date of its approval by the Supreme Lodge.

The defendant's fifth objection, that the plaintiff cannot recover in this suit because he failed to pursue his remedies within the lodge before bringing suit, offers the most serious difficulty in this case. The general rule that a member of a lodge having a claim against the lodge must exhaust his remedies within the lodge as provided by its bylaws before he can resort to proceedings at law has been well established in a number of cases in this State: Beeman v. Supreme Lodge, Shield of Honor, 215 Pa. 627; Myers v. Fritchman, 6 Pa. Superior Ct. 580; Robinson v. Harshaw, 63 Pa. Superior Ct. 482. In this case the lodge has a bylaw specifically providing that members shall not resort to proceedings in the courts until they have exhausted their remedies in the "tribunals of the order".

There is also a line of cases holding that this rule does not apply to the personal representative of a deceased member: Penn Lodge, No. 105, K. of P. v. Chalfant's Admin'rs, 1 Ches. Co. R. 133; Schaefer or Sifer v. Verhovay Aid Ass'n, 17 Luz. L. R. 165; Dobson v. Hall, 11 Pa. C. C. 532. The plaintiff relies on these latter cases to relieve him from the duty of first proceeding within the lodge, claiming that, in analogy to the case of an administrator of a decedent's estate, a guardian of a lunatic, not being a member of the lodge, is not required to proceed within the lodge. We are not satisfied that the two offices are analogous in this respect or that the same reasoning applies to them. In this case the real plaintiff is a member of the lodge and he merely sues by a guardian. The plaintiff himself is still a member of the lodge and is still bound by its bylaws in every respect in which he can comply with them. It is not an impossibility for a guardian to pursue the remedies afforded by the lodge, at least in form. There is no hardship in this requirement. All that is necessary for him to do is to inquire of the lodge for full information as to its rules, regulations, and bylaws, and instructions as to what they require of him. If such information is withheld or if false information is given him, or if he is in any manner obstructed in following the proceedings, then the lodge would be estopped from setting up as a defense the failure of the claimant to pursue his remedy in the lodge. In the case of the personal representative of a decedent, the situation is different. Such a representative is acting for the creditors and heirs of the

decedent, all of whom are strangers to the lodge. The person in whose right they claim, being deceased, is no longer a member of the lodge and for that reason they are very properly relieved from the obligation of proceeding within the lodge.

This leads us to the inquiry whether the defendant in this case is estopped by any act or omission on its part from setting up as a defense the fact that the plaintiff failed to exhaust his remedies within the lodge. The plaintiff, by his attorney, specifically asked the defendant for a copy of its bylaws. The defendant, so far as the testimony shows, never complied with this request, but on the contrary in response to the request picked out a particular bylaw which apparently suited its purpose and furnished a copy of that alone. It has given no reason for not complying with this request. Apparently the plaintiff had no knowledge of the provision in the bylaws that a member must first exhaust his remedies within the lodge before bringing suit. Had the defendant complied with the plaintiff's request to furnish him with a copy of the bylaws, it is more than likely that the plaintiff would have discovered that provision and would have made efforts to comply with it before bringing his suit in this court. We do not think that the defendant acted in good faith when, being asked for a copy of its bylaws, it sent only one particular article which it believed would lead the plaintiff to abandon its claim. In Biblical language, the plaintiff "asked for bread and was given a stone." The defendant should not now be permitted to set up as a defense an omission on the part of the plaintiff for which the defendant was in all probability to blame. Under the circumstances, the member being mentally incapacitated from providing his guardian with necessary information, the defendant lodge owed the very highest degree of consideration and good faith toward its unfortunate member, and a court of equity cannot permit the defendant now to take advantage of its own wrong to the injury of one who had a right to rely on its assistance and good faith. Even further than that, we are of the opinion that where a member of a beneficial association has become helpless by reason of mental infirmity, the lodge owes such a high degree of good faith toward that member as to require it voluntarily to furnish the guardian or representative of the member the fullest information as to all of the member's rights and duties under the rules and regulations of the order so as to enable the guardian to determine, first, whether his ward has a just claim; and, second, what proceedings must be taken in the lodge to secure or recover the claim. Failing of any of these duties, the lodge is estopped from setting up as a defense failure to take proceedings of the necessity of which the guardian had no knowledge or reason to know. We conclude that the defendant in this case by reason of its failure to provide the plaintiff with a copy of its bylaws, as he requested, is estopped from setting up this defense to the claim.

The bylaw providing for sick benefits clearly contemplates payments at the rate of $5 per week during the first year from the beginning of such payments, $4 per week during the second year, and $3 per week thereafter. The first year is to be calculated from the beginning of the period of liability for payments and not from the first year of the illness. Therefore this plaintiff is entitled to receive payments from January 11, 1926, at the date of $5 per week during the first year thereafter, at the rate of $4 per week during the second year thereafter, and at the rate of $3 per week from the beginning of the third year thereafter until October 30, 1928, the date of the hearing in the case. At that time it was established that the plaintiff's dues were paid in full, that he was still a member in good standing, and that his illness and incapacity had continued to that time. These dues amount to $592.70, upon which the plaintiff is also entitled to interest.

## Conclusions of law

1. The court has jurisdiction of the parties and of the subject matter: Gottselig v. Cigarmakers I. U. of America, 76 Pa. Superior Ct. 273, 275.

2. The statute of limitation does not run in law, and the principle of laches does not apply in equity, as against a person non compos mentis.

3. A beneficial association cannot set up as a defense against a claim for sick benefits noncompliance on the part of the claimant with the bylaws of the association as to notice of illness where such noncompliance was caused by mental incapacity.

4. A mutual beneficial association is held to a high degree of good faith towards a member who has become incapacitated by reason of insanity.

5. A beneficial association sued for sick benefits is estopped from setting up as a defense failure of the claimant to first exhaust the remedies provided by its bylaws, where such member was insane and the lodge refused to furnish to his guardian on request a copy of the bylaws necessary to advise him of such remedies. In such case the association by its refusal waives its requirements for proceedings within the lodge.

6. A beneficial association sued for sick benefits is estopped from setting up as a defense failure of the claimant to first exhaust the remedies provided by its bylaws, where such member was insane and the lodge failed to inform the guardian, not a member of the lodge, of the proceedings afforded by the lodge and of the requirement that he exhaust the remedies provided by the lodge before resorting to courts of law. In such case the association by its neglect waives its requirements for proceedings within the lodge.

7. An amendment of a bylaw changing the terms and conditions upon which sick benefits are payable is not retroactive in the absence of a proviso to that effect.

8. The plaintiff is entitled to a decree in his favor for the payment of sick benefits.

## Decree

Now, to wit, October 19, 1931, this cause having come on to be heard upon bill, answer and proofs, upon consideration thereof, it is ordered, adjudged and decreed:

1. That there is due to the plaintiff from the defendants, William K. Krout, Leidy Kratz, J. B. Derr, and others, members of and comprising Mont Alto Lodge No. 246, Knights of Pythias, and the said Mont Alto Lodge No. 246, Knights of Pythias, sick benefits accruing from January 11, 1926, at the rate of $5 per week during the first year thereafter, at the rate of $4 per week during the second year thereafter, and at the rate of $3 per week from the beginning of the third year thereafter until October 30, 1928, together with interest thereon from the date when each weekly payment fell due as aforesaid.

2. That the said William K. Krout, Leidy Kratz, J. B. Derr, and others, members of and comprising Mont Alto Lodge No. 246, Knights of Pythias, forthwith pay to the said Michael Althouse, guardian of Emerson R. Althouse, plaintiff herein, the sum of $592.70, being the total accrued sick benefits to said date, with interest as aforesaid, out of the treasury and other funds and property of the said Mont Alto Lodge No. 246, Knights of Pythias.

3. That the said William K. Krout, Leidy Kratz, J. B. Derr, and others, members of and comprising Mont Alto Lodge No. 246, Knights of Pythias, forthwith pay the costs of this suit out of the treasury, funds and other property of the said Mont Alto Lodge No. 246, Knights of Pythias.

From Isaac J. Vanartsdalen, Doylestown, Pa.